UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                              CASE NO. 24-17637-SMG

GERMAN GUSTAVO VACCA              Proceedings under Chapter 13

Debtor.

_____ /

## CREDITOR'S MOTION TO DISMISS CASE
## FOR BAD FAITH AND MOTION TO TERMINATE AUTOMATIC STAY

ART PLUMBING AND AIR CONDITIONING, LLC. ("Creditor Art Plumbing "), through undersigned counsel, files this Motion to Dismiss Case for Bad Faith and Motion to Terminate Automatic Stay and in support thereof would state:

1.      On July 29, 2024, (the "Petition Date"), the Debtor, GERMAN GUSTAVO VACCA, filed a voluntary petition under title 11, chapter 13.

2.      Debtor is an individual.

3.      Debtor is the owner of a business known as Bikepass Motor Sports.

4.      Pursuant to Debtor's Bankruptcy Schedules Debtor has total unsecured claims in the amount of  $477,122.39 of which $ 441,196.50 is owed to creditor, Art Plumbing and Air Conditioning, Inc. ("Art Plumbing"). Debtor disputes this liability.

5.      Pursuant to the Debtor's bankruptcy schedules, American Express was owed the amount of $25,723.39.  However, the Debtor now asserts he does not personally owe American Express, but the soley owned company Bikepass Motor Sports is liable for this debt and is paying American Express directly.

6.      Debtor has objected to all claims other than :

Jefferson Capital which is Rooms to Go $2916.00

Resurgent which is Home depot $1481.00
Resurgent which is Goodyear Tires $1094.47

Accordingly, the Debtor proposes to  pay 100% of the total amount of $5,491.47.

7.    With respect to the state court action was brought in 2019 by Art Plumbing for

less than $5,000.00 to recover the cost of retrieving a camera lodged in a plumbing line of

Debtor's home.

8.    The state court Counterclaim filed by the Debtor asserted ten (10) counts and

seven (7) sub-counts alleging violation of Florida's Deceptive and Unfair Trade Practices Act

("FDUTPA") as well as counts for Illegal Phone Recordings, Breach of Contract, and

Negligence.

9.    A copy of the 29 page Motion dated March 16, 2024 Motion is attached hereto as

**Exhibit A.** The Motion describes five years of frivolous litigation with the Debtor.

10.    The Debtor did not prevail on any aspect of his counterclaims. The Court's Order

Granting Sanction of Dismissal of Plaintiff's Claims for Fraud on the Court/ Intrinsic Fraud

which states quite plainly that Plaintiff's claims are dismissed for Fraud on the Court is attached

hereto incorporated herein as **Exhibit B.**

11.    The Final Summary Judgment as to the FDUTPA claims is attached hereto and

 incorporated herein as **Exhibit C**. The Court stated as follows

"2. The Court finds that Defendant fails to satisfy any of the necessary elements for the
claims made in its Counterclaim.

3. The Court finds that Defendant's FDUTPA (F.S. 501. et al.) claims were wholly
unsupported by material facts *ab intio*, to show that Plaintiff engaged in deceptive acts,
and that Defendant sustained damages caused by Plaintiff."

**Accordingly, Art Plumbing spent 5 years defending itself against the Debtor's baseless**

**counterclaims** (emphasis added).

12.    The Debtor's counsel sent the following email to counsel for Art Plumbing:

From: Tyrone Latour <tyronelatour@latouresquire.com>
Sent: Tuesday, December 20, 2022 10:54 AM
To: Chuck Kramer <ckramer@bmwlawyers.net>; Michelle Joiner-Quijano
<michelle@bmwlawyers.net>; Robert Gaines <robert@bmwlawyers.net>
Subject: Settlement Negotiation: Walk-away Offer

'Morning Chuck,

The Vaccas are submitting this Walk-away Offer to ART. See terms below. Kindly let me know if ART accepts it. This would spare ART from having to pay thousands to go to a jury trial. This would spare ART the risk of losing and being on the hook for our damages, **including my attorney's fees which are comparable to yours (i.e. a quarter million dollars)**. And as I've mentioned to you before, if ART wins, I **have advised my client to file for bankruptcy to discharge any judgment that ART gets.** Therefore, this offer would be very beneficial to ART (and to Vacca too of course) and the parties should settle in this way (emphasis added).

13.    The two (2) claims for FDUTPA and FS 57.105 are independent of each other per Florida Statute and they are allowed to claim damages under each one, independent of the other. Accordingly, Art Plumbing has a claim in the amount of ( $441,196.50 x2) = $882,383.00.

## MEMORANDUM

Courts have  recognized as indicia of bad faith, lack of financial distress of the debtor, few non-insider unsecured creditors, use of Chapter 11 to resolve pre-petition two-party disputes in state court and timing of a petition that evidences its primary use as a litigation tactic. *See In re Serfass*, 325 B.R. 901, 905–06 (Bankr. M.D. Fla. 2005), *In re Moog*, 159 B.R. 357, 361 (Bankr. S.D. Fla. 1993); *In re Punta Gorda Associates*, 143 B.R. 281, 283–84 (Bankr. M.D. Fla. 1992); *In re On the Ocean, Inc*., 16-16204-BKC-RBR, 2016 WL 8539791, at *2 (Bankr. S.D. Fla. June 6, 2016).

Bankruptcy courts may likewise dismiss bankruptcies filed under other chapters of the

Bankruptcy Code where the bankruptcy process is being abused and the petition has been filed in bad faith. *See, e.g., In re Alt*, 305 F.3d 413, 418 (6th Cir. 2002) (bankruptcy court may dismiss Chapter 13 bankruptcy filed in bad faith); *In re Buis, 337* B.R. 243, 250 (Bankr. N.D. Fla. 2006) (same); *In re Piazza*, 719 F.2d 1253 (11th Cir. 2013) ("[T]he power to dismiss 'for cause' in §707(a) includes the power to involuntarily dismiss a Chapter 7 case based on prepetition bad faith."). As recognized by one bankruptcy court, "debtors are not entitled to have the Bankruptcy Court hear their complaints merely because they are disgruntled with the process in State Court." *In re Muskogee Envtl. Conservation* Co., 236 B.R. 57, 66–67 (Bankr. N.D. Okla. 1999).

The timing of this Debtor's filing (prior to the state court hearing awarding the fees) , the Debtor's schedules, the Debtor's Objection to almost all claims, the Debtor's plan to pay all creditor's other than Art Plumbing. and the threatened bankruptcy by Debtor's state court counsel to extort a settlement from Art Plumbing even though his counterclaim had no merit, all indicate  this case was filed for a tactical advantage. The Debtor is simply trying to avoid any financial responsibility for filing a frivolous counterclaim which created  five years of litigation burdening the state court and costing Art Plumbing a substantial amount of attorney fees. See affidavit of reasonable attorney fees attached hereto as **Exhibit D.**

Art Plumbing is the prevailing party in the state court action and Debtor is undisputably responsible for the attorney fees incurred by Art Plumbing. Debtor's unsecured debt exceeds $477,122.39. Accordingly, this Debtor does not qualify for chapter 13 relief. Debtor's choice to file chapter 13 was a litigation tactic calculated to circumvent any investigation into his finances or an objection to his discharge based upon Section 523 (a)(6).

The  filing of a bankruptcy in bad faith also constitutes "cause" pursuant to 11 U.S.C.A. § 362(d)(1) to terminate or lift the stay to permit a party to conclude litigation or the exercise of remedies in a non-bankruptcy court. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 ( 11th cir

1988).  Although *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir 1988) is a chapter 11

case, the principal of bad faith is equally applicable in chapter 13. This Debtor's intent to abuse

the judicial process also provides the legal basis to terminate the stay as to Art Plumbing in order

to  conclude the state court litigation as to the award of attorneys fees .

      WHEREFORE, the Debtor respectfully requests that this Honorable Court enter an Order

Granting Debtor's Motion to Dismiss this Case for Bad Faith and to Terminate the Automatic

Stay as to Art Plumbing and  for such further relief as the court deems just.

      I HEREBY CERTIFY that a copy of the above and foregoing has been served to the
parties on the list attached hereto on this 31st day of October, 2024, and that I am admitted to the
Bar of the United States District Court for the Southern District of Florida and I am in
compliance with the additional qualifications to practice in this Court set forth in Local Rule
2090-1(A).

> Susan D. Lasky
> Attorney for Debtor
> 320 S.E., 18th St.
> Fort Lauderdale Fl 33316
> (954) 400-7474
> Sue@suelasky.com
>
> By: */S/ SUSAN D. LASKY*
>    SUSAN D. LASKY, ESQ
>    Florida Bar No.: 451096

John C. Brock, Esq. on behalf of Creditor Wells Fargo Bank, N.A.
bk@exllegal.com, jcb@exllegal.com

Susan D. Lasky, Esq on behalf of Creditor Art Plumbing, Inc.
ECF@suelasky.com, ecfsuelasky@gmail.com;r48532@notify.bestcase.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Christian Somodevilla on behalf of Debtor German Gustavo Vacca
cs@lss.law, info@lss.law;cs@ecf.courtdrive.com;mch@lss.law

Robin R Weiner
ecf@ch13weiner.com, ecf2@ch13weiner.com

# EXHIBIT "A"

IN THE COUNTY COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

*CASE#:  CONO 19-005578*

ART PLUMBING & AIR
CONDITIONING LLC d/b/a
ART PLUMBING AC & ELECTRIC,
a Florida limited liability company

      Plaintiff,

vs.

GERMAN VACCA, an

      individual, Defendants.

_____

**PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS BASED ON PREVAILING PARTY STATUS UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

Plaintiff, Plaintiff ART PLUMBING & AIR CONDITIONING LLC d/b/a ART PLUMBING AC & ELECTRIC, ("Plaintiff" or "ART"), by and through its undersigned counsel, moves for an award of its reasonable attorneys' fees, costs, interest, and expenses incurred in this action against Defendant, GERMAN VACCA ("VACCA"), and states as follows in support thereof:

**PROCEDURAL BACKGROUND**

1.    On April 22, 2019, Plaintiff commenced this action against VACCA for Declaratory Judgment (as to camera equipment retrieval) (Count I), Declaratory Judgment (as to costs associated with camera retrieval) (Count II), and Injunctive Relief as to Entry Upon Land (Count III), therein demanding an award of attorneys' fees and costs pursuant to the language of the contract between the parties.

2.     On October 30, 2019, VACCA filed its Counterclaim, in which it asserted ten (10) counts and seven (7) sub-counts alleging violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), as well as counts for Illegal Phone Recordings, Breach of Contract, and Negligence.

3.     The FDUTPA claims, breach of contract claim (dismissed as sanctions for Fraud on the Court), negligence claim (dismissed for Fraud on the Court) and illegal phone recording claim asserted in the Counterclaim give rise to prevailing party attorney's fees and costs.

4.     On February 27, 2020, VACCA filed its first Motion for Summary Final Judgment of Dismissal.

5.     On May 6, 2020, the Court entered its Order denying VACCA's first Motion for Summary Final Judgment of Dismissal.

6.     On May 20, 2020, Plaintiff filed its first Amended Complaint, asserting the same three claims as the original Complaint, with an added count for Breach of Contract.

7.     On September 2, 2020, Plaintiff filed its Second Amended Complaint, asserting a sole count for Breach of Contract as to the Contract of October 10, 2018.

8.     On September 17, 2020, pursuant to an agreed order, Plaintiff voluntarily dismissed its first three (3) counts and filed it's Third Amended Complaint, containing a sole count for Breach of Contract.

9.     On October 16, 2020, VACCA filed its Answer and Affirmative Defenses to the Third Amended Complaint and Counterclaims.  This Counterclaim contained the same causes of action as the original Counterclaim filed by VACCA on

2

October 30, 2019.

10.    On May 13, 2021, VACCA filed its Amended Motion for Summary Final Judgment of Dismissal, which was denied by order of the Court on July 1, 2021.

11.    On June 18, 2021, VACCA filed its FS 57.105 Sanctions Motion, asserting that Plaintiff and its Attorneys knew or should have known that its equitable claims were not supported by the material facts and/or existing law.

12.    On September 8, 2021, VACCA filed a second 57.105 Sanctions Motion as to the breach of contract claim, asserting that Plaintiff knew that VACCA fully performed and discharged its obligations under the contract. That claim for Breach was dismissed as a sanction for Fraud on the Court.

13.    On August 1, 2021, Plaintiff ART Plumbing served counsel for Vacca with its Warning/ Notice of Intent to File FS 57.105 motion for Sanctions and on September 13, 2021, thirty-three (33) days later, with no withdrawal of the baseless pleadings, Plaintiff filed its Motion for Attorney Fees, Prejudgment Interest, and Sanctions Pursuant to Florida Statute §57.105.

14.    On September 23, 2021, this Court entered an Order denying VACCA's Motion for sanctions related to Plaintiff's equitable claims noting that VACCA "[D]id not prove the requirements stated in Fla. Stat. 57.105(1)(a) and 57.105(1)(b).

15.    On February 18, 2022, VACCA filed its Third Motion for Summary Final Judgment of Dismissal, which was denied pursuant to this Court's Order filed on May 11, 2022.

16.    On June 6, 2022, VACCA filed its Motion to Amend its Answer, in which VACCA attempted to amend the fact that VACCA was a party to the contract which it had been litigating for over three(3) years. This Motion was ultimately denied by an Order entered on June 23, 2022, as the Amendment was deemed untimely, unduly prejudicial to

Plaintiff, changing the underlying issues of the case, and creating the need for additional discovery and changes in pleadings after over three years of extensive litigation.

17.    On June 7, 2022, VACCA filed its fourth Motion for Summary Final Judgment of Dismissal.

18.    On July 15, 2022, Plaintiff filed its Motion for Summary Judgment as to Counts 1, 2, 3, 4, 5, 6, 7(a-f), 8, and 9(c).

19.    On September 7, 2022, this Court entered Summary Judgment ("Judgment") in favor of Plaintiff as to all of VACCA's FDUTPA claims (Counts 1, 2, 3, 6, 7(a-f), 8, and 9(c) of VACCA's Counterclaim), with VACCA voluntarily withdrawing Counts 4, 5, and 7(d) and (e).  A

copy of the Summary Judgment is attached hereto as **Exhibit "A."**

20.    The September 7, 2022 Order of Summary Judgment did not make a finding regarding Plaintiffs entitlement to attorneys' fees and compensable costs however it expressly retained jurisdiction to make such determination.

**21.**    On September 14, 2022, this Court entered an Order denying VACCA's Fourth Motion for Summary Judgment.

22.    On January 26, 2023, the Court heard argument from both parties on Plaintiff's Motion to Dismiss Counts 9(a, b) and 10 for Fraud on the Court/ Intrinsic Fraud, and the Court granted Plaintiff's Motion to Dismiss for Fraud on the Court on January 30, 2023.

23.    Plaintiff filed its Motion for Attorney Fees and costs on Defendant's baseless FDUTPA claims as required under FS §501.2105 and a hearing was scheduled for February 7, 2023 as to a determination of Plaintiff's entitlement to costs and fees but

was cancelled pending entry of final judgment and discovery continued through July 11, 2023.

24.    On December 1, 2023, Plaintiff/ Counter Defendant filed its Motion for Partial Final Judgment as to all counts of Defendant/ Counter Plaintiff's Counterclaim. This Honorable Court heard extensive argument from both parties on February 5, 2024.

25.    On February 5 2024 this Court heard argument from both parties on Plaintiff's Motion for Partial Final Summary Judgment and on February 18, 2024 – after almost five (5) years of highly contested litigation- the Court entered its Order granting Final Summary Judgment to Plaintiff, ART Plumbing as to each and every one of Counts 1,2,3,4,5,6,7(a,b,c,d,e,f), 8, 9(a,b,c) and 10 of Defendant's Counterclaim.

26.    The amount of Plaintiffs attorneys' fees and costs are set forth in the affidavit attached hereto as **Exhibit "B"** and have been opined as reasonable in the affidavit of reasonableness attached hereto as **Exhibit "C."**

## SUMMARY OF BASIS FOR RELIEF

Plaintiff was forced to institute action against the Defendant in order to retrieve camera equipment that became lodged in Defendant's plumbing during the course of its work at Defendant's property. Entry upon land, retrieval of the camera and allocation of the costs associated therewith to Defendant (which was mutually agreed upon in the parties' contract) was the sole purpose of Plaintiffs litigation. Pursuant to the Contract of October 10, 20187, Plaintiff was also entitled to attorney fees and costs associated with any efforts necessary to retrieve its camera.

Defendant was served with the underlying lawsuit on May 2, 2019. Five (5) weeks after Defendant was served with the underlying lawsuit by Plaintiff, on June 17, 2019, Defendant returned ART's property (the camera) which was the reason for filing

the suit in the first place. In his Answer to Plaintiff's Complaint, Defendant expressly admitted that he performed all work necessary to retrieve the camera, and after retrieval, returned the camera to ART thus giving Plaintiff what it initially sought by filing its suit. Simultaneously, Defendant filed his

spectacular and utterly baseless ten (10) count, seven (7) sub-count, (seventeen (17) counts in total)  Counterclaim sounding primarily in FDUTPA. After three and one half  (3½) years of extensive litigation and discovery, Plaintiffs Motion for Summary Judgment as to counts 1, 2, 3, 4, 5, 6, 7(a-f), 8, and 9(c) was granted on September 7, 2022.

The facts as clearly presented and shown to this Court are irrefutable that there was a complete absence of a justiciable issue of either law or fact raised by Defendant or his counsel. The Court's Order granting Final Summary Judgment states *inter alia*:

> …[T]here was sufficient evidence presented such that this Court grants final summary judgment where the movant, ART Plumbing A.C. and Electric showed that **there is no genuine dispute as to any material fact and the movant, <u>ART Plumbing A.C. and Electric is entitled to final summary judgment as a matter of law</u>**.
>
> 2. The Court finds that **Defendant fails to satisfy any of the <u>necessary elements for the claims made in its Counterclaim</u>**.
>
> 3. The Court finds that **Defendant's FDUTPA (F.S. 501. et al.) claims <u>were wholly unsupported by material facts *ab initio*</u>, to show that Plaintiff engaged in deceptive acts, and that Defendant sustained damages caused by Plaintiff.**
>
> 4. **The Court finds that the <u>FDUTPA claims are separate and distinct from Plaintiff's claim for breach of contract and are severable, not interrelated, not intertwined and do not arise from the same aggregate, of operative facts</u>** [<u>Sarkis v. Pafford Oil Co., Inc.</u>, 697 So.2d 524 (Fla. 1st DCA 1997): <u>Management</u>

6

<u>Computer Controls, Inc. v. Charles Perry Const., Inc.</u>. 743 So.2d 627 (Fla. 1st DCA 1999)].

Over the course of almost five (5) years of extensive litigation, and overlitigation caused and fostered by Defendant and its counsel, Plaintiff has shown the Court that Defendant and his counsel have engaged in baseless, frivolous, litigation throughout the course of these proceedings where Defendant/ Counter Plaintiff never had a case to begin with in ANY of its claims.

The words of the Order on Partial Final Judgment contain the words necessary to determine a final adjudication as to all of Defendant/ Counter Plaintiff's claims, and an end to all labor on that portion of the case. more specifically:

> ORDERED AND ADJUDGED that Plaintiff's Motion for Final Summary Judgment as to Defendant/ Counter Plaintiff's counts 1,2,3,4,5,6,7(a-f), 8, 9(a, b, c) and 10 is, therefore
>
> **GRANTED.**
>
> **5. The Defendant/Counterplaintiff shall take nothing by this action, and Plaintiffs/Counterdefendants shall go hence without day as to Defendant/Counterplaintiff's Counterclaims.**
>
> **6. The Court reserves jurisdiction as to Plaintiff's request for costs, fees, sanctions and other relief.[1]**

Pursuant to F.S. Sec 501.2105 (3), (4) and (5) Plaintiff is entitled to all costs, and fees associated with the defense against the frivolous, and baseless FDUTPA claims filed by Defendant and his counsel where-Defendant/ Counter Plaintiff

---

[1] See Raymond v. Caldwell Banker Residential Real Estate, Inc., 848 So.2d 1160 (Fla. 4th DCA 2003). ("After stating that the motion for summary judgment was granted, the court included the traditional words of finality "shall go hence without day." See Form 1.994, Fla. R. Civ. P. An order which grants a motion for summary judgment, and includes the words "go hence without day" is a final judgment. <u>Allstate Ins. v. Collier</u>, 405 So.2d 311 (Fla. 4th DCA 1981).")

Plaintiff demands that a judgment for costs, fees, pre-judgment interest, and whatever other relief this Court deems proper be entered against Defendant and Defendant's counsel. See F.S. Sec 501.2105(1), (2), (3), (4) and (5).

## MEMORANDUM OF LAW

### I.    Timeliness of Motion

Fla. R. Civ. P. 1.525 states, "Any party seeking judgment taxing costs, attorneys' fees, or both shall serve a motion no later than 30 days after filing of the judgment, including a judgment of dismissal, or the service of a notice of voluntary dismissal, which judgment or notice concludes the action as to that party." Rule 1.525 was adopted to establish an explicit time requirement and eliminate the uncertainties caused by the previous "reasonable time" standard. Catalo v. Llano Financing Group, LLC, 238 So. 3d 885 (Fla. 4th DCA 2018); see Barco v. School Board of Pinellas County, 975 So. 2d 1116 (Fla. 2008) (rule does not create 30-day window starting at entry of judgment; it requires only that motion be served no later than 30 days following filing of judgment). When a judgment is entered, the time for filing the motion for attorneys' fees under Rule 1.525 runs from the date the final judgment is filed with the clerk. See Manimal Land Co. v. Randall, E. Stofft Architects, P.A., 889 So.2d 974 (Fla. 4th DCA 2004).

### II.   Prevailing Party

A party need not recover the entire amount of its claim in order to be the prevailing party. For purposes of awarding attorneys' fees, the test for determining the "prevailing party" is "to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues before the court. See Moritz v. Hoyt Enterprises,

8

Inc., 604 So.2d 807, 810 (Fla.1992); Port-A-Weld, Inc. v. Padula & Wadsworth Const., Inc., 984 So. 2d 564 (Fla. 4th DCA 2008). A party prevails on the significant issues if the party prevails on any significant issue in the case that achieved a benefit sought by the parties in the action. Moritz, 604 So.2d at 810.

In the case at bar, the most significant, and overriding issue was unquestionably the FDUTPA/ FS. §501.et.al. claims by Defendant/ Counter-Plaintiff Vacca. The Counterclaims were the overriding issue(s) addressed in the past five (5) years of litigation and Final Judgment has been entered on those claims. Truthfully, the FDTUPA claims and ART's defense thereof has been the only substantive issue litigated over the past five (5) years. This is axiomatibecause ART's single claim for Breach of Contract has never been challenged – and how could it be? Defendant, Vacca surrendered the camera five (5) weeks after he was served with the Summons and Complaint- effectively a confession of judgment. ART's initial equitable claims were voluntarily dismissed without prejudice four (4) years ago and despite Defendant's efforts to recover fees for same, it was shown that there was no improper assertion of tort and contract claims where; 1) Plaintiff retained its right to an election of remedies; 2) Defendant's assertion of improper "equitable" claims was baseless because Plaintiff only sought guidance from the Court, not claims in equity against Defendant and;3) the Order dated September 23, 2021 after hearing on Defendant, Vacca's Motion for Sanctions and Fees with respect to the equitable claims states:

> Vacca's Motion for Sanctions related to ART's Equitable Claims (filed on 6/18/21) is DENIED. **Defendant did not prove the requirements stated in Fla. Stat. 57.105(1)(a) and 57.105(1)(b)**

*See* Order dated September 23, 2021.

The Fourth District has provided guidance on the definition of a prevailing party which is applicable to the case at bar. In <u>Deutsche Bank, National Trust Company as Trustee for Holders of the BCAP LLC Trust 2007-AA1 v. Quintela</u>. 268 So.3d 156 (Fla. 4th DCA 2019) the court stated that with respect to those cases which contemplate an award of costs, fees and sanctions:

> A "prevailing party" is for purposes of statute allowing for prevailing parties to collect attorneys' fees… is a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.

Deutsche Bank at 159.

*See also* "Black's Law Dictionary which defines 'prevailing party' as '[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded.' BLACK'S LAW DICTIONARY 1154 (8th ed. 2004)

Final Judgment has been entered against Vacca and ART Plumbing is the prevailing party for the purposes of an award of fees, costs, and sanctions.

**III   Prevailing Party Fees Under FDUTPA**

In actions alleging deceptive and unfair trade practices, the court has authority to award the prevailing party reasonable attorneys' fees. <u>Diamond Aircraft Industries, Inc. v. Horowitch</u>, 107 So. 3d 362 (Fla. 2013); <u>Humane Society of Broward County, Inc. v. Florida Humane Society</u>, 951 So.2d 966 (Fla. 4th DCA 2007). The legislative summary in a staff analysis regarding FDUTPA provides further support for the principal that the attorney's fees provision applies to claims asserted under FDUTPA, and notes that FDUTPA "[p]rovides for payment of attorney's fees and costs to the prevailing party in an action under [FDUTPA]." Fla. H.R. <u>Comm.on Governmental Operations,</u> HB 1915 (1973), Staff Analysis 13 (May 4, 1973) (available from Fla. Div. of Archives).

Florida's courts of appeal have applied this interpretation, holding that FDUTPA's attorney's fees provision applies to a defendant [*counter-defendant in this case*] who prevailed in an action filed against him under that act, even though the trial court ultimately held that FDUTPA did not apply. *See* Rustic Village, Inc. v. Friedman, 417 So.2d 305, 305-06 (Fla. 3d DCA 1982) (stating that upon a trial court's finding that a plaintiff filed a claim under FDUTPA, an award of attorney's fees to a prevailing defendant [*counter-defendant in this case*] is permissible in the action, even if the trial court ultimately holds that FDUTPA does not apply). This reasoning was followed by Florida's Fourth District Court of Appeal in Brown v. Gardens by the Sea South Condominium Ass'n, 424 So.2d 181 (Fla. 4th DCA 1983). The fees recoverable are those devoted to the entire action, not merely the FDUTPA claims, "unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501." Diamond Aircraft Industries, Inc., 107 So. 3d at 370. The Fourth DCA adopted this interpretation of §501.2105 in Mandel v. Decorator's Mart, Inc. of Deerfield Beach, 965 So. 2d 311, 314 (Fla. 4th DCA 2007):

> This statutory language contemplates recovery of attorney's fees for hours devoted to the entire litigation ... and does not require allocation of attorney time between the chapter 501 count and other alternative counts based on the same consumer transaction unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501.*Heindel v. Southside Chrysler-Plymouth, Inc.,* 476 So.2d 266, 271 (Fla. 1st DCA 1985). This means that where Chapter 501 claims are based on the same transaction as alternative theories of recovery, "no allocation of attorney's services need be made except to the extent counsel admits that a portion of the services was totally unrelated to the 501 claim or it is shown that the services related to issues, such as punitive damages, which were clearly beyond the scope of a 501 proceeding." Id. at 272; see Smith v. Bilgin, 534 So.2d 852, 854 (Fla. 1st DCA 1988)."

Mandel, 965 So. 2d at 314.

On September 7, 2022, this Court entered Summary Judgment in favor of Plaintiff on nine(9) of the ten(10) counts and seven (7) sub-counts contained in Defendant's Counterclaim.  Counts 1,2,3,4,5,6, and 7(a),(b)(c),(d)(e), and (f) were all FDUTPA which had no basis in law or fact *ab initio*  and Defendant and Defendant's counsel knew this from the time before they ever filed suit. Plaintiff has clearly prevailed on the FDUTPA claims and it was evident at the hearing on Plaintiff's Motion for Summary Judgment, that not only were Defendant's claims baseless, but Defendant and Defendant's attorney knew that the claims were baseless *ab initio*, and acted in bad faith in pursuing their frivolous claims.

On January 26, 2023, the Court heard argument from both parties on Plaintiff's Motion to Dismiss Counts 9(a, b) and 10 for Fraud on the Court/ Intrinsic Fraud, and the Court granted Plaintiff's Motion to Dismiss for Fraud on the Court on January 30, 2023. During the course of that hearing, Defendant's counsel admitted that the allegations contained in Counts 9(a,b) and 10 were not truthful and that as the attorney he should have known, and that his client, did know that they were not truthful. *See* Hearing transcript attached hereto as **Exhibit "D"**. This Court then specifically stated in its Order:

> [The] Court finds that there was sufficient evidence presented such that this Court finds actionable fraud through Fraud on the Court and under the Court's authority hereby Dismisses with Prejudice counts 9(a)(Failed to Jet Sewer line), 9(b)(Failed to Comply with Service Warranty) and 10(Negligence) of the Counterclaim.

See Order attached hereto as **Exhibit "E.**

On February 8, 2024 this Court heard argument from both parties on Plaintiff's Motion for Partial Final Judgment as to Counts 1,2,3,4,5,6,7 (a-f),

12

8,9(a,b,c) and 10 of Defendant's Counterclaim and granted Plaintiff's Motion thereby rendering final adjudication as to all of the counts in the Counterclaim. As noted above herein, the Court specifically stated that;

> …[T]here was sufficient evidence presented such that this Court grants final summary judgment where the movant, ART Plumbing A.C. and Electric showed that there is no genuine dispute as to any material fact and the movant, ART Plumbing A.C. and Electric is entitled to final summary judgment as a matter of law.
>
> **2. The Court finds that Defendant fails to satisfy any of the necessary elements for the claims made in its Counterclaim.**
>
> **3. The Court finds that Defendant's FDUTPA (F.S. 501. et al.) claims were wholly unsupported by material facts *ab initio*, to show that Plaintiff engaged in deceptive acts, and that Defendant sustained damages caused by Plaintiff.**
>
> **4. The Court finds that the FDUTPA claims are separate and distinct from Plaintiff's claim for breach of contract and are severable, not interrelated, not intertwined and do not arise from the same aggregate, of operative facts** [Sarkis v. Pafford Oil Co., Inc., 697 So.2d 524 (Fla. 1st DCA 1997); Management Computer Controls, Inc. v. Charles Perry Const., Inc.. 743 So.2d 627 (Fla. 1st DCA 1999)].

Results, rather than procedure, govern the determination as to which party is the prevailing party in litigation so as to be entitled to an award of costs, fees and sanctions. Where there is a party who clearly prevailed and there is a statute or contract providing for a mandatory award of attorney's fees to a prevailing party, reasonable attorney's fees must be awarded. Sorrentino v. River Run Condominium Ass'n, 925 So. 2d 1060 (Fla. 5th DCA 2006).

**III.    Calculation of Fees**

In Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985),

*modified* 555 So.2d 828, the Florida Supreme Court adopted the federal "lodestar" method of computing reasonable attorneys' fees. Under the lodestar approach, the court (1) determines the number of hours reasonably spent on the litigation; (2) determines a reasonable hourly rate for the services of the prevailing party's attorney for the type of litigation involved; (3) multiplies the result of (1) and (2) to arrive at a "lodestar figure"; and (4) when appropriate, adjusts the lodestar figure on the basis of the contingent nature of the litigation and the results obtained. Id.

In this case: **1)** the number of hours were absolutely reasonable in light of the repeated barrage of frivolous pleadings; **2)** delay and concealment of discovery created by Defendant's counsel; **3)** outright, intentional misrepresentations of fact by Defendant and his counsel; **4)** although the litigation wasn't contingent, the stakes were quite high given Plaintiff, ART Plumbing status in the business and general community. Defendant knowingly and intentionally asserted a total of 14 claims of fraud and deceptive business practices against a company whose status and reputation has been spotless for thirty (30) years. It is unquestionable that ART and its business would have been greatly and immediately harmed if Defendant's scam had not been uncovered and stopped; and 5) the value of Plaintiff counsel's time where Plaintiff's counsel has twenty-nine (29) years of experience in the practice of law, fifteen (15) of which have been as a Florida Board Certified Construction Lawyer. Plaintiff's counsel has argued and won in eight (8) of the Florida circuit courts at the trial level, and at the appellate level in every one of the five (5) Florida district courts and the Florida Supreme Court; and 5) Plaintiff counsel's fees are commensurate with his, his co-counsel's, and their paralegals' experience.

## IV.    Reasonable Fees Sought in Novel, Complex, and High Value Litigation.
### Threats of extortion and destruction of business by Tyrone Latour, Esq.

14

In the case at bar, what should have been a simple lawsuit for recover of a sewer camera, was turned into a litigation nightmare by the spectacular and outrageous ten (10) count, and nine (9) sub-count, counterclaim filed primarily for the advancement of financial gain by Defendant and his counsel through frivolous and baseless claims. Defendant and his counsel have attempted to deny and conceal underlying facts through intentional misrepresentation and obfuscation throughout the course of this litigation.

Defendant and his counsel's real motivation in this lawsuit is readily observable by their actions. It is a fact that Defendant's counsel sent an email to Plaintiff's counsel dated April 25, 2019, at 12:35 p.m. in which Defendant's counsel attempted to use extortionate threats to obtain settlement monies from Plaintiff and Plaintiff's counsel obviously in hopes for some "fast buck" settlement money. More specifically, Defendant's counsel requested that Plaintiff pay Defendant monies and then stated:

> Additionally, please keep in mind that my clients are not collectible. **Therefore, if ART wins in Court for some incomprehensible reason, it will not be able to collect anything, and it (or you) will lose thousands of dollars on attorney's fees. I anticipate that the head-of-household garnishment exception or bankruptcy will protect us - and rightly so.**

*See* copy of Defendant's counsel's email attached hereto as **Exhibit "F"**

On November 6, 2019, Defendant's counsel, Tyrone Latour, made his intentions crystal clear in an email to Plaintiff's counsel wherein he stated:

> And please take a close look at our counterclaims and advise your client to do the right thing and settle with us now, paying our claims and attorney fees. Our amended pleading makes it really clear that we can prove all of our claims and defenses, so ART should do the right thing now instead of later. I am shocked that their insurance carrier hasn't appeared in this case yet, which tells me that ART will be directly on the hook for all of this. **Please advise them carefully, or this could be the beginning of the end of their family business.**

*See* email from Tyrone Latour to Charles Kramer, November 6, 2019 attached hereto as **Exhibit "G."**

This was not a negotiation; this was not a settlement offer subject to confidentiality, this was a direct threat of extortion by Plaintiff and its counsel. *See* Paris v. Paris, 412, So. 2d 952(Fla. 1st DCA 1982); Gordon v. Gordon, 625 So. 2d 59 (Fla 4th DCA 1993); Cooper v. Austin,750 So.2d 711(Fla. 5th DCA 2000) ("*Extortionate settlement offers not confidential and are a fraud on the court-"the presentation of the extorted agreement to the court was a fraud on the court making the trial court an instrument of her extortion*.") *See especially* CCP Harbour Island, LLC v. Manor at Harbour Island, LLC, 373 So. 3d 318 (Fla. 2d DCA, 2023)("***Knowing subversion of the civil justice system by the presentation of fabrications of fact to a truth-seeking tribunal with the potential to make good on threats to destroy an opposing party's business venture is the type of "fraudulent, malicious, [and] deliberately ... oppressive" conduct for which punitive damages are designed not only to punish the perpetrator "for its wrongful conduct" but also "to deter similar misconduct by it and other actors in the future***." citing Owens-Corning Fiberglas Corp., 749 So. 2d at 486; Grove Isle Ass'n, 350 So. 3d at 830; KIS Grp., 263 So. 3d at 65-66)); cf. Southstar Equity, LLC v. Lai Chau, 998 So. 2d 625, 633 (Fla. 2d DCA 2008).

Furthermore, when Defendant was asked at his deposition if was going to file bankruptcy in the event that he did not prevail, and then shown the email from his attorney. He stated that he did not have plans to file for bankruptcy in the event he lost

and that he would pay any judgment entered against him. The threat of bankruptcy **was thus concocted by Defendant's counsel operating outside the knowledge of his client.** *See* excerpt of deposition transcript at pages 202 line 7 through 204 line 14 of German Vacca attached hereto as **Exhibit "H."**

It is a fact that despite being advised repeatedly by Plaintiff's counsel that Defendant could not recover "emotional damages" based on well-established law. Defendant continued to claim and seek emotional damages for his FDUTPA claims on his proposed jury forms when he had no actual damages to begin with.

It is a fact that Defendant has filed extensive discovery including seven (7) sets of Interrogatories, seven (7) sets of Request for Production, and four (4) Requests for Admissions which Plaintiff has responded dutifully however Plaintiff has submitted only three (3) sets of Interrogatories, and three (3) Request for Production for which multiple Motions to Compel, Order to Show Cause, and even Motion for Contempt had to be filed by Plaintiff.

Examples of Defendant, Counsel's attempts to "game the system" are manifest and for purposes of illustration Plaintiff shows this Court that after filing its Second Interrogatories (which included the question as to whether 0whether Defendant had ever paid for the Second Contract) on August 9, 2021 and Request for Production on August 10, 2021. Defendant refused to answer the Interrogatories and Plaintiff set its motion to compel for hearing on September 22, 2021.

This Court may remember the uncomfortable hearing which took place on September 22, 2021, where the Court was required to demand an answer from Vacca's counsel no less than five (5) times before Vacca's counsel finally admitted that Vacca

had never paid anything for the Second Contract. See excerpt of hearing transcript at pgs.11, ln 9 -pg. 16, ln 10, attached hereto as **Exhibit "I."**

Defendant subsequently provided Answers to interrogatories but refused to answer the specific amount of damage it was claiming. Plaintiffs counsel pointed out in the hearing and in pleadings that it was necessary to know the actual amount of damages in FDUTPA claims.

It is a fact that Plaintiff filed its Second Motion to Compel Answers to Second Interrogatories 48 hours after receipt of the incomplete Answers and at the hearing on February 9, 2022, Defendant's counsel attempted to tell the Court that "Mr. Kramer never said the word "amount" in his interrogatories" at which point Plaintiffs counsel was forced to read Plaintiffs Second Interrogatories in open court and its was shown that each of the interrogatories specifically asked for the "amount of damages. *See* Order entered by this Court dated February 14, 2022 and recorded in the Court's docket.

The truth is that it took seven (7) months for Plaintiff to force Defendant to answer the Second Interrogatories including multiple hearings and two (2) Orders from this Court.

It is a fact that after answers to interrogatories were received. Plaintiffs counsel attempted to schedule Defendant's and Defendant's witnesses depositions and Defendant's counsel refused to comply claiming that the discovery deadline had expired -after he had intentionally withheld discovery so as to hamper the ability to take deposition. This required yet another ruling from the Court ordering Defendant's counsel to produce the witnesses. *See* Order entered by this Court dated April 21, 2022 and recorded in the Court's docket.

It is a fact that when the depositions of the witnesses finally took place, despite the depositions being noticed as *duces tecum*, and properly served, every witness failed to bring documents "because they forgot" and Defendant's counsel willfully and intentionally

refused to comply with the subpoena compelling production of documents which required a fourth time that Plaintiff was required to seek assistance from the Court in obtaining discovery the Defendants and it counsel refused to provide. See Order of August 15, 2022 in the Court's docket. Order on Contempt

It is a fact that Defendant's counsel took over 13 hours over the course of two (2) days to depose the president and owner of ART Plumbing, Gregg D'Attile, during which time Defendant's counsel would repeatedly ask Mr. D'Attile a question and then re-ask the same question but instructing Mr. D'Attile that he was being asked as 1) Gregg D'Attile personally and then 2) the owner of ART Plumbing. *See* deposition transcript of Gregg D'Attile at pages 5,6,70, 71, 134-138 attached hereto as **Exhibit "J."**

Most disturbing of all is that for almost five (5)  years Defendant's counsel has intentionally and openly, misrepresented to Plaintiff, Plaintiff's counsel and this Honorable Court, that it was German Vacca who signed the First Contract with ART Plumbing. Over the course of three (3) separate Complaints and Amended Complaints, Answers to Interrogatories, and Request for Production, that Defendant admitted five (5) separate times that it was he who had signed the First Contract. Yet after all that time and on the eve of trial, on June 6, 2022, Defendant filed a Motion to Amend its Answer to state that it was not Defendant German Vacca who had signed the First Contract with ART Plumbing but instead, his wife, Adriana Tobon. Further to that, Defendant was seeking Summary Judgment as to ART's single claim for Breach of Contract based on the new and spectacular claim that Defendant, German Vacca could not be responsible for the Contract which his wife had signed.

It is unquestionable that Defendant and Defendant's counsel knew those facts back in 2019 and all throughout the course of litigation chose to intentionally hide and

conceal the facts until the last minute so they could then spring the surprise on Plaintiffs and this Court like some cheap parlor trick- making a mockery of Plaintiff, this Court and the entire judicial process. This Court wisely denied Defendant's Motion to Amend on the basis that it would change the underlying facts of the case, change the real parties in interest, unduly prejudice Plaintiff, and that it was far too late for Defendant to adopt a completely different set of facts - and a new truth. *See* Order of June 23, 2022 attached hereto as **Exhibit "K."**

To be clear, Defendant's actions and those of his counsel constitute intrinsic fraud which served only to increase the burden on Plaintiff. This Court agreed with Plaintiff's position when it entered a Dismissal with Prejudice as to Counts 9(a,b) and 10 of the Counterclaim as Sanctions for Fraud upon the Court./ Intrinsic Fraud.(*Supra*)

In Parker v. Parker, 950 So.2d 388 (Fla. 2009), the Florida Supreme Court explained the difference between extrinsic and intrinsic fraud.

> Intrinsic fraud, on the other hand, applies to fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried or could have been tried. This Court ... has expressly held that false testimony given in a proceeding is intrinsic fraud. We have stated that "[i]f a judgment was obtained upon false testimony or a fraudulent instrument and the parties were heard, the evidence submitted to and received consideration by the court, then it may be said that the matter has been actually tried, or was so in issue that it might have been tried and the parties are estopped to set up an intrinsic or direct fraud to vitiate the judgment, because the judgment is the highest evidence and cannot be contradicted by the parties to it." See Johnson v. Wells, 72 Fla. 290, 299, 73 So. 188, 191 (1916) (citation omitted) citing DeClaire v. Yohanan, 453 So.2d 375,377 (Fla.1984).

> In essence, extrinsic fraud is conduct which prevents a party from trying an issue before the court, and the prevention itself becomes a collateral issue to the cause; whereas intrinsic fraud is the presentation of misleading information on an issue before the court that was tried or could have been tried. Id.

*See* <u>Parker</u> at 392.

It is a fact that the docket for this case shows two-hundred and ninety (290) entries including this Motion which is typical of much larger matters but in this case was necessitated by Defendant and his counsel's litigation tactics in effort to reap financial benefit at the expense of all other considerations including the truth and all the while embracing and fomenting extortion.

Florida courts have consistently held that in determining an award of attorney's fees, the magnitude of the entire case should be considered.  See <u>Centex–Rooney Constr. Co. v. Martin County</u>, 725 So.2d 1255, 1258 (Fla. 4th DCA 1999) (quoting <u>In re Estate of Platt</u>, 586 So.2d 328, 333–34 (Fla.1991)).

A major factor in the determination of reasonableness of fees is whether the action was a high-risk case involving novel and complex issues, which requires higher levels of legal skill to defend. See <u>Fla. Patient's Comp. Fund v. Rowe</u>, 472 So. 2d 1145, 1149–50 (Fla. 1985). Courts also consider the time and labor required, the amount involved, and the results obtained. *See* Id. *See also* <u>Gen. Motors Acceptance Corp. v. Laesser</u>, 791 So. 2d 517, 519–20 (Fla. 4th DCA 2001) (holding that the novel and complex nature of the issues in the case, combined with the favorable results achieved by the prevailing party, supported a finding that the time and fees incurred were reasonable).

Here, Defendant's counsel transformed this case from a simple action to retrieve a sewer camera, into a lengthy multi-count Counterclaim which sought nearly one half of a million dollars in damages from Plaintiff.  **Plaintiff, ART Plumbing was further threatened as to its business and professional standing in the South Florida business community where it is a highly recognized, well respected, and well-established**

21

business entity which had been accused of fraudulent and deceptive practices. Plaintiff, ART took these accusations very seriously as would any business and community leader when threatened with such slanderous and unfounded accusations.

The owner, president, and founder of ART Plumbing, Gregg D'Attile has spent his life building ART Plumbing into a pillar of the business and general community. It would be unreasonable and derelict to think that such a business, and community leader would do any less to guard and protect his life's work.

The concern that the president and owner of ART Plumbing had over harm to his business' reputation, his personal reputation, and the possibility of loss of the business and livelihood for his children was enormously compelling in the decision to fight the baseless and fraudulent claims asserted by the Defendant and his counsel.

Despite their knowledge that the claims were wholly unsupported by any tangible facts or the applicable law, Defendant and his counsel forced Plaintiff to expend almost five (5) years' worth of time and great money fighting the baseless FDUTPA claims and efforts to overcome their chicanery. Considering the potential loss of the business and the very real threats by Defendant's Counsel to destroy the family business - which the owner and founder/ Gregg D'Attile had spent his life creating - the loss of stature in the business community, and the nature of the issues involved, it is clear that this was a novel and complex case which required high levels of legal skill to defend. *See* Rowe, 472 So. 2d at 1149-50. Ultimately, Plaintiff obtained a significant victory with Final Judgment, proving that the time spent in defense and prosecution efforts was reasonable under these circumstances. *See* Id.

**V.      Defendant and his Counsel cannot argue as to reasonableness of fees.**

On December 20, 2022, Defendant's Counsel, Tyrone Latour sent Plaintiff's Counsel, Charles M. Kramer, an email in which he suggests settlement. At the same time, Defendant's Counsel : 1) admits that he is aware of the attorney fees incurred by Plaintiff; and 2) that Defendant's attorney fees are at the same amount as Plaintiff's at that time, i.e., "a quarter of a million dollars" as of December 20, 2022. *See* email attached hereto as **Exhibit "L."**

In this case, the communication from Defendant's Attorney, took place on December 20, 2022 and the statements are not being offered to offer proof of Defendant's culpability as to the baseless and fraudulent statements it made over the course of litigation. Rather, the communication is being offered to show the uncontested value of attorney fees to that point, and what would be reasonable thereafter. In <u>Mortgage Guarantee Ins. Corp. v. Stewart</u>, 427 So.2d 776 (3rd DCA 1983) the court stated:

> The settlement, however, may be admissible at trial for other purposes apart from an admission against interest. For example, an indemnitee who has settled with the injured party, after first having "vouched in" the indemnitor in the original suit, "may establish his liability to the third party [original plaintiff] in his action for indemnity by proving his potential liability to the third party and the reasonableness of the settlement." Wetherington, Tort Indemnity in Florida, 8 Fla.St.U.L.Rev. 383, 432 (1980). Also, the settlement may be admissible to show the extent of the indemnitee's damages.

*See* <u>Mortgage Guarantee Ins. Corp</u>. at 780

The determination of the falsity and baselessness of Defendant's counterclaim was established through hard work and good lawyering over the course of five (5) years. Liability is a *fait accompli*. At this point all that needs to be determined is the propriety  (as accorded by Florida Statutes) and the amount of fees to be reimbursed (

23

as shown by stipulated amount of time and fees incurred by counsel). *See also* <u>Bankers Trust Co. v. Basciano</u>, 960 So.2d 773, 780 (Fla. 5th DCA 2007) ("If the evidence is offered for another purpose, the evidence is not barred by section 90.408 and will be admissible if it is relevant to prove a material fact or issue, subject to section 90.403."); Evidence of settlement negotiations is admissible to establish other relevant facts."); see also <u>Agan v. Katzman & Korr, P.A.</u>, 328 F.Supp.2d 1363 (S.D.Fla.2004) (holding that settlement documents were admissible under both section 90.408 and Federal Rule of Evidence 408 because the documents were offered not to establish liability, but to establish violation of consumer credit laws)8 "The concept of limited admissibility applies to evidence of settlement and compromise negotiations." Ehrhardt, § 408.1, at 309.

## VI.    Plaintiff is the Prevailing Party in this Action and is Entitled to Prevailing Party Attorneys' Fees Under FDUTPA

Plaintiffs original Complaint brought causes of action for Declaratory Judgment as to camera equipment retrieval (Count I), Declaratory Judgment as to costs associated with camera retrieval (Count II), and Injunctive Relief as to Entry Upon Land (Count III).  Soon thereafter, Defendant filed its Counterclaim, raising seven (7) causes of action under FDUTPA (Counts 1, 2, 3, 4, 5, 6, and 7(a,b,c,d,e,f). Defendant pled entitlement to fees under FDUTPA in each of those twelve (12) counts.

From that point forward, Plaintiff and Defendant have litigated the issues of this case for almost five (5) years. There has been extensive discovery from both parties, countless discovery disputes requiring the filing and arguing of motions, and several Summary Judgment Motions filed by Defendant. Defendant's strategy, best summarized as a shotgun approach of pleading and motion practice, has forced

Plaintiff to devote an astounding amount of time to properly prosecute its claims and defend against the baseless claims asserted by Defendant.  Now, Defendant must address the stark reality of its actions.

After hearing argument of counsel, review of \the facts and relevant case law on Plaintiff's Motion for Summary Judgment, this Court entered Summary Judgment in favor of Plaintiff as to 7 of the 10 counts (including five (5) sub-counts) contained in Defendant's Counterclaim (Counts 1, 2, 3,4,5, 6, 7(a-f), 8, and 9(c)).

After hearing argument of counsel, review of the facts and relevant case law, on Plaintiff's Motion to Dismiss for Fraud upon the Court/ Intrinsic Fraud, this Court entered its Order on January 30, 2023 dismissing the three (3) remaining counts of the Counterclaim, (Counts 9(a), (b), and 10) for Fraud on the Court.

After hearing argument of Counsel, review of the facts and relevant case law, this Court entered Final Judgment on February 18, 2024 bringing finality and adjudication to all counts of the Counterclaim, an end to judicial labor, and closure to the great and substantial labors of Plaintiff/ Counter Defendant's counsel which were successfully spent addressing the fraudulent and baseless claims by Defendant and his counsel.

Plaintiff has prevailed on seventeen (17) counts and sub-counts in total. All that remains before this Court at this time is Plaintiff's breach of contract claim in the single count Complaint. Given that Plaintiff has prevailed on each and every FDUTPA claim asserted by Defendant, which constitutes 12 of the 17 total causes of action raised by Defendant/ Counter Plaintiff, it is clear that Plaintiff has substantially prevailed in the significant issues. *See* Deutsche Bank, National Trust Company as Trustee for Holders of the BCAP LLC Trust 2007-AA1 v. Quintela, 268 So.3d 156 (Fla. 4th DCA 2019)

Additionally, Florida courts have recognized that where some performance is due and a party is forced to litigate to bring about that performance, that party is entitled to prevailing party status. See <u>American Insulation of Fort Walton Beach, Inc. v. Pruitt</u>, 378 So. 2d 839 (Fla. 1st DCA 1979); <u>Ashoka Enterprises, Inc. v. Design Guild, Inc.</u>, 536 So. 2d 286 (Fla. 3d DCA 1988). From that point forward, Plaintiff and Defendant have litigated the issues of this case for **almost five(5) years.**

There has been extensive discovery from both parties, countless discovery disputes requiring the filing and arguing of motions[2], and several Summary Judgment Motions filed by Defendant. Defendant's strategy, best summarized as a shotgun approach of pleading and motion practice, refusal to comply with rules of discovery and rules of court, extortionate litigation has forced Plaintiff to devote an astounding amount of time to properly defend against the baseless claims asserted by Defendant. Now, Defendant faces the stark reality that prevailing party fees under FDUTPA encompasses almost every <u>aspect</u> of this <u>litigation.</u>

Plaintiff was forced to institute action against the Defendant in order to retrieve camera equipment that became lodged in Defendant's plumbing during the course of work. Retrieval of the camera and avoidance of the costs associated therewith (which was mutually agreed upon in the parties' contract) was the sole purpose of this litigation. This was the initial issue before the court. *See* <u>Moritz v. Hoyt Enterprises, Inc.</u>, 604 So. 2d 807, 810 (Fla. 1992). In his Answer to Plaintiff's Complaint, Defendant expressly states that he performed all work necessary to retrieve the camera, and after retrieval, returned the camera to ART. In doing so, Defendant effectively handed ART the results sought through the institution of this action.

Additionally, Florida courts have recognized that where some performance is

due and a party is forced to litigate to bring about that performance, that party is entitled to prevailing party status. American Insulation of Fort Walton Beach, Inc. v. Pruitt, 378 So. 2d 839 (Fla. 1st DCA 1979); Ashoka Enterprises, Inc. v. Design Guild, Inc., 536 So. 2d 286 (Fla. 3d DCA 1988).

Here, Plaintiff was forced to institute action against the Defendant in order to retrieve its camera equipment that became lodged in Defendant's plumbing during the course of work. Retrieval of the camera and avoidance of the costs associated therewith (which was mutually agreed upon in the parties' contract) was the sole purpose of this litigation. This was the initial issue before the court. *See* Moritz v. Hoyt Enterprises, Inc., 604 So. 2d 807, 810 (Fla. 1992).

The return of the camera should have been the finalization of this matter, but instead, Defendant chose to file its utterly spectacular and completely baseless ten (10) count counterclaim which included seven (7) sub-counts. After almost five years, every single one of Defendant's FDUTPA claims were proven to be without any merit *ab initio*. Indeed, Defendant's FDUTPA claims were ultimately discovered to be baseless from every perspective of review and examination. Defendant himself admitted under oath in deposition that he had never sustained any actual damages!

Based on these facts, along with the very clear wording of the Final Summary Judgment, it is clear that ART has prevailed on the significant issues before the court. Therefore, ART is the prevailing party in this matter.

As the prevailing party, ART is entitled to recover all those fees, costs and other relief associated with the baseless FDUTPA claims. *See* Mandel, 965 So. 2d at 314; ICMfg & Associates, Inc., Fla. 2d DCA, 238 So.3d 326 (2017).

27

WHEREFORE, Plaintiff ART PLUMBING & AIR CONDITIONING LLC d/b/a ART PLUMBING AC & ELECTRIC, moves this Court for an award of all attorneys' fees, costs, and interest, incurred during the course of this litigation against Defendant GERMAN VACCA, in an amount to be determined upon hearing of this motion, together with such other and further relief as this Court deems just and proper.

Attendant with this Motion, Plaintiff files its Affidavit of Taxable Costs attached as **Exhibit "M"**, Sworn Statement of Claim as **Exhibit "N"**, Affidavit of Legal Services Rendered attached as **Exhibit "B"**, Affidavit of Reasonableness attached as **Exhibit "C"**, and Plaintiff's counsel notes that the total amount of fees paid (or to be paid) by Plaintiff, is in the amount of $441,196.50.

Plaintiff attaches the attorney fee invoice from its expert witness, David Worthy, Esq., BCS in the amount of $4,887.50 **as Exhibit "O."**. The award of a fee charged by a lawyer who testifies as an expert is not be discretionary if the attorney expects to be compensated for the testimony provided in the proceedings. *See* Rock v. Prairie Bldg. Solutions, Inc., 854 So. 2d 722 (Fla. 2d DCA 2003 (citing Stokus v. Phillips, 651 So. 2d 1244, 1246 (Fla. 2d DCA 1995)); Straus v. Morton F. Plant Hospital Foundation, Inc., 478 So. 2d 472, 473 (Fla. 2d DCA 1985) ("the award of expert fees is discretionary only where the testifying attorney expert does not expect to be compensated for that testimony.") In this case the expert witness attorney expects to be compensated in the fair and reasonable amount of $4,8878.50.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on March _____ 2024, a true and correct copy of the foregoing was sent via the E- filing Portal and via email: tyrnelr@latouresquire.com to Tyrone Latour, Esq., Latour, Esq. P.A., 9746 NW 18th Street, Coral Springs, FL 33071-5824.

By: Charles M. Kramer
CHARLES M. KRAMER, Esq., BCS
CONSTRUCTION LAW GROUP OF
FLORIDA
2900 N. University Drive, Ste. 36
Coral Springs, Fl. 33065
Tel. (954) 340-5955
Fax. (954) 340-6069
cmk@ckramerlaw.com
tinas@ckramerlaw.com

29

# EXHIBIT
# "B"

**IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. <u>**CONO19005578**</u>  DIVISION: <u>**72**</u>  JUDGE: <u>**Hurley, John (72)**</u>

**Art Plumbing & Air Conditioning LLC**

Plaintiff(s) / Petitioner(s)

v.

**German Vacca**

Defendant(s) / Respondent(s)

_____/

## <u>ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS FOR INTRINSIC FRAUD /FRAUD ON THE COURT</u>

THIS CAUSE having come before the Court upon Plaintiff's 'Motion For Sanctions for Intrinsic Fraud/ Fraud on the Court, Defendant's Opposition, and Plaintiff's Reply, the Court having heard and considered the arguments of both parties, and in accordance with Fla. R. Civ.

P. 1.510 the Court giving its reasoned opinion with enough specificity to provide useful guidance to the parties it is hereby:

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Sanctions for Intrinsic Fraud / Fraud on the Court is **GRANTED**:

**THE COURT**, having heard and carefully considered argument by counsel, reviewed and carefully considered the pleadings and applicable case law including but not limited to: Parker v. Parker, 950 So.2d 388 (Fla. 2009); Wheeler v. Baars, 15 So. 584 (Fla.1894); Baker v. United Services Auto. Ass&#39;n., 661 So.2d 128 (Fla. 1st DCA 1995); Ramey v. Haverty Furniture Companies, Inc., 993 So.2d 1014 (Fla. 2d DCA 2008); OneWest v. Alessio, 182 So. 3d 855, 857 (Fla. 4th DCA 2016); Kozel v. Ostendorf, 629 So.2d 817, 818 (Fla.1993), and all case law and pleadings judicially noticed, the Court finds that there was sufficient evidence presented such that this Court finds actionable fraud through Fraud on the Court and under the Court's authority hereby Dismisses with Prejudice counts 9(a)(Failed to Jet Sewer line), 9(b)(Failed to Comply with Service Warranty) and 10(Negligence) of the Counterclaim.

EXHIBIT
E

**FURTHERMORE,** the COURT specifically finds that Defendant was solely responsible for the perpetration of Fraud on the Court and Defendant's Counsel was **not** a party to same.

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>30th day of January, 2023</u>.

<u>CONO19005578 01-30-2023 9:39 AM</u>
Hon. John Hurley
**COUNTY COURT JUDGE**
Electronically Signed by John Hurley

**Copies Furnished To:**
Bill Paralegal , E-mail : paralegal4.latouresquire@gmail.com
Charles M. Kramer , E-mail : ckramer@bmwlawyers.net
Charles M. Kramer , E-mail : Michelle@BMWlawyers.net
Edwina V Kessler , E-mail : pleadingspck@chkklaw.com
Edwina V Kessler , E-mail : pleadings@chkklaw.com
Edwina V Kessler , E-mail : pleadingsevk@chkklaw.com
Tyrone A. Latour Latour , E-mail : tyronelatour@latouresquire.com

# EXHIBIT "C"

Filing # 156866277 E-Filed 09/07/2022 05:16:56 AM

IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. <u>CONO19005578</u>   DIVISION: <u>72</u>   JUDGE: <u>Hurley, John (72)</u>

**Art Plumbing & Air Conditioning LLC**

Plaintiff(s) / Petitioner(s)

v.

**German Vacca**

Defendant(s) / Respondent(s)

_____/

## <u>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT'S /COUNTER PLAINTIFF'S COUNTS 1,2,3,4,5,6,7, (A-F), 8 AND 9 (C)</u>

**THIS CAUSE** having come before the Court upon Plaintiff's 'Motion For Summary Judgment and Defendant's Opposition (including his Declaration) as to Defendant/ Counter Plaintiff's counts 1,2,3,4,5,6,7(a-f), 8 and 9(c ) the Court having heard and considered the arguments of both parties, and in accordance with Fla. R. Civ. P. 1.510 the Court giving its reasoned opinion with enough specificity to provide useful guidance to the parties it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment as to Defendant/ Counter Plaintiff's counts 1,2,3,4,5,6,7(a-f), 8 and 9(c) is **GRANTED** in part:

1. Plaintiff's Motion for Summary Judgment is **GRANTED** as to counts 1,2,3,6,7(a),(b),(c),(d)(e),(f), 8, and 9(c )(regarding the website pop-ups). The Court finds that under the standard articulated by the U.S. Supreme Court in <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317 (1986); <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242 (1986); and <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,</u> 475 U.S. 574 (1986) (the Celotex trilogy) and adopted by the Florida Courts pursuant to <u>Lopez v. Wilsonart, LLC,</u> 275 So. 3d 831, 832 (Fla. 5th DCA 2019, that there was sufficient evidence presented such that this Court grants summary judgment where the movant, ART Plumbing A.C. and Electric  showed that there is no genuine dispute as to any material fact and the movant, ART Plumbing A.C. and



Electric is entitled to judgment as a matter of law.

2. Defendant voluntarily withdraws counts 4, 5, and 7(d) and (e ).

3. The Court makes no finding as to the issue of failure of consideration for the Second Contract with respect to Defendant Vacca's counterclaims .

4. The Court reserves ruling as to Plaintiff's request for costs and fees as set forth in Plaintiff's Motion.

5. No further motions for Summary Judgment will be permitted.

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>6th day of September, 2022</u>.

<u>CONO19005578 09-06-2022 2:47 PM</u>
Hon. John Hurley
**COUNTY COURT JUDGE**
Electronically Signed by John Hurley

Copies Furnished To:
Bill Paralegal , E-mail : paralegal4.latouresquire@gmail.com
Charles M. Kramer , E-mail : ckramer@bmwlawyers.net
Charles M. Kramer , E-mail : Michelle@BMWlawyers.net
Edwina V Kessler , E-mail : pleadingspck@chkklaw.com
Edwina V Kessler , E-mail : pleadings@chkklaw.com
Edwina V Kessler , E-mail : pleadingsevk@chkklaw.com
Tyrone A. Latour Latour , E-mail : tyronelatour@latouresquire.com

# EXHIBIT "D"

IN THE COUNTY COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

CASE NO.: CONO19005578

ART PLUMBING & AIR CONDITIONING LLC
d/b/a ART PLUMBING AC & ELECTRIC,
a Florida limited liability company

     Plaintiff,

vs.

GERMAN VACCA, an individual,

     Defendant.

_____/

## AFFIDAVIT OF REASONABLE ATTORNEY FEES

STATE OF FLORIDA
COUNTY OF ALACHUA

     BEFORE ME, the undersigned authority, personally appeared DAVID L. WORTHY, who

being first duly sworn deposed and said:

     1.    I am an attorney practicing in Gainesville, Alachua County, Florida, in the Eighth

Judicial Circuit and I have practiced law in the State of Florida for 29 years.  During that same

time, I have also continuously been licensed to practice law in the State of Georgia.  Periodically,

and as a case may require, I have also been admitted to practice in various other states, and a tribal

court *Pro Hac Vice*.

     2.    For the entire 29 years of my practice, I have specialized in the area construction

law, including representing contractors, in construction claim/defect and lien foreclosure cases,

and I have rendered legal services in connection with matters substantially similar to the matters

raised in the instant case, and the services rendered by Charles M. Kramer, Esq. and other attorneys

and staff in his firm, on behalf of Plaintiff, Art Plumbing & Air Conditioning, LLC ("ART

1



PLUMBING") in this case.

3.    I have been Board Certified in Construction Law for 19 years; since 2005, the first year The Florida Bar acknowledged certification in the area of construction law, and have continuously focused my practice in that area of law.

4.    Given the nature of my specialty area of practice, I am involved in litigation throughout the State of Florida, and have had numerous cases – both large, small and in between – in the courts located in South Florida, including Monroe, Dade, Broward, Palm Beach, St. Lucie and Indian River Counties.

5.    I have been a member of the Construction Law Committee of The Florida Bar, since the Committee's inception, and am also a member of the Forum Committee on the Construction Industry and the Fidelity and Surety Law/Tort Trial and Insurance Practice Section of the American Bar Association.

6.    I am familiar with the fees charged throughout this state, including South Florida, for services rendered in connection with construction law cases and matters similar to those raised in this case.

7.    I am familiar with the factors found in **Florida Patient's Compensation Fund v. Rowe**, 472 So. 2d 1145 (Fla. 1985), concerning the award of attorney's fees to a prevailing party in litigation.    According to that decision, the Court should utilize the following criteria in determining a reasonable attorneys' fee award:

   a.  The time and labor required, the novelty and difficulty of the question involved and the skill requisite to perform the legal service properly;
   b.  The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
   c.  The fees customarily charged in the locality for similar legal services;
   d.  The amount involved and the results obtained;
   e.  The time limitations imposed by the client or by the circumstances;
   f.  The nature and length of the professional relationship with the client;

2

g. The experience, reputation, and ability of the lawyer or lawyers performing the services; and

h. Whether the fee is fixed or contingent.

Id. at 1150.

The first step requires the court to determine the number of hours reasonably expended on the litigation. Id. To do so, the party seeking fees must present "accurate and current records of work done and time spent on the case. Id. Importantly, counsel may claim only those hours that he could properly bill to his client." Id. (emphasis added). The "novelty and difficulty of the question involved" should be reflected in the number of hours reasonably expended. Id.

The second step requires the court to determine the reasonable hourly rate for the attorney's services, taking into consideration the above-factors, except: time and labor required, novelty and difficulty of the question, the results obtained and whether the fee was fixed or contingent. Id. at 1150 - 1151.

Once these determinations are made, the Court must then multiply the figures to calculate the "Lodestar" amount of fees. Once the court obtains the Loadstar amount, it may add or subtract from the fee based on the "contingency risk" factor and the "results obtained." Id.

8.     I have reviewed the majority of the file, including the court docket, the core and other relevant pleadings and Court Orders, relevant portions of deposition and hearing transcripts and various correspondence in this case, as well as the billing records for the services Mr. Kramer and others in his firm provided on behalf of ART PLUMBING in this case.

9.     I have consulted with counsel for ART PLUMBING, Mr. Kramer, to discuss the legal proceedings in this case, and the challenges and complexity raised by Defendant, German Vacca ("VACCA") and his counsel, Tyrone A. Latour, Esq. We specifically discussed the nature of ART PLUMBING's claim, VACCA's multiple counter-claims, and the respective defenses

3

raised thereto in this case, the events and circumstances as the case proceeded, the parties' motion practice, the working relationship between Mr. Kramer and opposing counsel, Mr. Latour, and any difficulties moving the case forward expeditiously and efficiently. Mr. Kramer was forthright and answered my questions fully and completely.

10.    I have personal knowledge of the qualifications and experience of counsel for ART PLUMBING, Mr. Kramer, and by reviewing his pertinent information contained in The Florida Bar website.

11.    I have performed general research regarding law firm economics for Broward County, including review of the Results of the 2022 Economics and Law Office Management Survey, published by the Florida Bar.

12.    I have considered all of the Rowe factors, and the other information obtained in my research and review of the attorneys' fees claim by ART PLUMBING in this case1, and I have determined the following:

a.    The reasonable number of hours spent on representation of ART PLUMBING by Charles M. Kramer and other attorneys and staff in his firm in this case are:

| | | | |
|---|---|---|---|
| Charles Kramer, BCS | 990.5 | @ $400.00 | $396,200.00 |
| Robert Gaines | 122.7 | @ $200.00 | $24,540.00 |
| Mark Mucci | 9.9 | @ $ 350.00 | $2,975.00 |
| Michelle Joiner | 81.2 | @ $125.00 | $10,153.00 |
| Tina Shatzkamer | 50.9 | @ $110.00 | $5,599.00 |
| Laurie Fox | 7.20 | @125.00 | $900.00 |
| TEMP (JAS) | 0.8 | @ 115.00 | $92.00 |
| Joanne Garcia | 2.8 | @ $130.00 | $382.50 |
| Elda Maiselle | 0.4 | @ $150.00 | $60.00 |
| Francis Rodriguez Rivera | 18.0 | @ $150.00 | $270.00 |
| Nicole Frances | 0.2 | @ $125.00 | $25.00 |

---

1 The attorney's fees and costs determined herein relate solely to the legal services expended to defend and defeat VACCA's counter-claim; the initial claim by ART PLUMBING, which has been declared separate and distinct, is still pending.

4

b.      The reasonable number hourly rate for Mr. Kramer's services in this case ranges from $500.00/hour to $550.00/hour, but as discussed *infra*, the hourly rate has been contractually discounted to $400.00 by Mr. Kramer for ART PLUMBING in this case based on their long-term and valued attorney-client relationship; and the reasonable hourly rates for other attorneys and staff working with Mr. Kramer are:

Attorneys:              $200.00 to $350.00
Paralegals:             $110.00 to $150.00

The hourly rates for each specific attorney and paralegal in this case are listed in section 12, above.

c.      Multiplying the respective reasonable number of hours for each biller by their respective reasonable and contractual rate, results in a determination of $441,196.50 as reasonable attorneys' fees to be awarded ART PLUMBING for the legal services of Mr. Kramer and others in his firm in this nearly six-year-long case.2

## <u>REASONABLE ATTORNEYS' FEES ANALYSIS:</u>

I.      <u>Fees Claimed</u>

The Total amount of fees (attorney/paralegal/law clerk) claimed by ART PLUMBING for defending VACCA's counter-claims equal $441,196.50.  They are broken down by biller in section 12, above, and again below.

II.     <u>Fees to Be Awarded Are Capped By Fee Modification Agreement</u>

Despite his higher, normal rate, due to a long-standing, good attorney-client relationship, Mr. Kramer agreed to reduce his fee charged to ART PLUMBING in this case to $400.00. Accordingly, all legal services by Mr. Kamer were billed at the rate of $400.00/hour for all work on the case.

---

2 See Footnote 1, above.

5

Therefore, this Court should apply the $400.00 per hour rate for all billable hourly services performed by Mr. Kramer, and those corresponding rates to the respective attorneys and staff, as noted above and below.

## III.   <u>Lodestar Calculation</u>

Based on the foregoing, and under the dictates of <u>Rowe</u>, the **Lodestar amounts** for the legal services Mr. Kramer provided for ART PLUMBING in the case, **as contractually capped**, are as follows:

| | | | |
|---|---|---|---|
| Charles Kramer, BCS | 990.5 | @ $400.00 | $396,200.00 |
| Robert Gaines | 122.7 | @ $200.00 | $24,540.00 |
| Mark Mucci | 9.9 | @ $ 350.00 | $2,975.00 |
| Michelle Joiner | 81.2 | @ $125.00 | $10,153.00 |
| Tina Shatzkamer | 50.9 | @ $110.00 | $5,599.00 |
| Laurie Fox | 7.20 | @125.00 | $900.00 |
| TEMP (JAS) | 0.8 | @ 115.00 | $92.00 |
| Joanne Garcia | 2.8 | @ $130.00 | $382.50 |
| Elda Maiselle | 0.4 | @ $150.00 | $60.00 |
| Francis Rodriguez Rivera | 18.0 | @ $150.00 | $270.00 |
| Nicole Frances | 0.2 | @ $125.00 | <u>$25.00</u> |

**TOTAL FEES:   $441,196.50**

*APPLYING THE <u>ROWE</u> FACTORS:*

A.   <u>The time and labor required, the novelty and difficulty of the question involved and the skill requisite to perform the legal service properly.</u>

Based on my review of the file records, and my interview with Mr. Kramer, this case presented many "novel" issues, all raised by counsel for VACCA, Mr. Latour. Through Mr. Latour's creative pleading, what was essentially a one-count complaint for breach of contract by ART PLUMBING to recover some camera equipment and for some relatively minor damages, it escalated into a legal proceeding that raised issues of fraud and illegal recording of wire communications. VACCA brought seven (7) counts under the auspice of FDUPTA, several also resting on application of Federal Code or Rules. In fact, one of the FDUPTA counts (#6) also

rested on F.S. 934.03 (illegal recording of phone call). Count 8 was just a straight-up claim under F.S. 834.03 – which also could carry criminal repercussions. Without opining on the merits, only two Counts 9 and 10 (breach of contract and negligence) should have been reasonably considered for purpose of the counter-claim. Addressing these novel issues required considerable additional, and in fact the majority of time on the part of ART PLUMBING's counsel.

Based on my review of the file records, including the docket records, as well as my interview of Mr. Kramer, I also understand that considerable time and expense was incurred to address VACCA's continuous and substantial discovery violations. Often, ART PLUMBING was required to involve the Court before discovery was forthcoming. Even then, some discovery was not forthcoming until the eve of trial – namely the identity of the true contracting party, for which the Court executed the ultimate sanction of dismissal of the remaining Counts (9 & 10) as a result of finding Intrinsic Fraud / Fraud Upon the Court on the part of VACCA.

VACCA's motion practice was also extraordinary, given the otherwise relatively simplistic case this should have been. VACCA filed – and argued four (4) Motions for Summary Judgment, prevailing on none of them. Even as late as March 8, 2024, VACCA sought to amend the findings of the Order Granting ART PLUMBING's Motion for Partial Final Summary Judgment – again, to no avail.

      B.     The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

Although what should have been a relatively simple, short-lived case – not the six-year case it turned out to be -- Mr. Kramer concedes that "this was not a factor" and should therefore not be considered by the Court.

      C.     The fees customarily charged in the locality for similar legal services.

Based on my state-wide practice, including in construction litigation matters in South Florida, I am familiar with the rates charged by experienced attorneys. It's been my finding that

qualified, experienced construction attorneys practicing in South Florida typically charge $500.00/hour and up. Mr. Kramer is highly qualified and experienced, and a well-regarded construction attorney; not only is he a Supreme Court Board Certified Construction Law attorney, but he has primarily practiced in that area for 27 years, and even has an underlying background in construction and civil engineering. I am also familiar with several high-profile construction cases that Mr. Kramer has been involved in, and prevailed. Four Hundred Dollars per hour ($400.00/hr) is a very reasonable rate for Mr. Kramer's legal services.

Additionally, The Florida Bar's Results of the 2022 Economics and Law Office Management Survey, lists the ranges of typical hourly rates for the Southeast Region, which encompasses Broward County. Based on this report, 43% of the attorneys in the Southeast Region who bill on an hourly basis charged at least $400.00 per hour3 – and that does not account for any specialization practice, which Mr. Kramer possesses. Accordingly, this Court should determine that Mr. Kramer's rate is consistent with – if not considerably less than -- "the fees customarily charged in the locality for similar legal services." Rowe, 472 So. 2d at 1150 (citing Disciplinary Rule 2-106(b) of the Florida Bar Code of Professional Responsibility).

D.    The amount involved and the results obtained.

As noted, the relief sought by ART PLUMBING when this case was initially brought was relatively minor. However, VACCA's counter-claims raised the stakes considerably. In addition to seeking well over $300,000.00 in monetary damages, VACCA also alleged that ART PLUMBING committed fraud and violated other criminal statutes. If not vigorously and properly defended, the impact of losing on such alleged claims could have devastated ART PLUMBING as a going business concern – not to mention subject its principals to potential criminal charges. Mr.

---

3 $400.00/hour was the highest rate identified in the Survey.

Latour, himself, recognized the severity of the potential impact to ART PLUMBING based on VACCA's claims when he wrote, "Please advise [ART PLUMBING] carefully, or this could be the beginning of the end of their family business."4  In the end, however, VACCA did not prevail on a single claim or theory. **Not only did VACCA not prevail, but every single one of his claims was disposed of either on summary judgment or dismissal.**

      E.      The time limitations imposed by the client or by the circumstances.

Mr. Kramer concedes that "this was not a factor" and should therefore not be considered by the Court.

      F.      The nature and length of the professional relationship with the client.

Mr. Kramer advises that he has had a very long-standing and good attorney-client relationship with ART PLUMBING, lasting for over ten (10) years. Certainly, long-term representation of a particular client, as between ART PLUMBING and Mr. Kramer, provides certain intrinsic benefits to the representation of such client – for example, the attorney and client have clearer understandings and expectations of each others business and operations, and limitations. With results like those obtained by Mr. Kramer in this case, I can see why ART PLUMBING has, and from what I have been advised, will continue to look to Mr. Kramer for legal advise and representation.

      G.      The experience, reputation, and ability of the lawyer or lawyers performing the services.

I have been personally involved with Mr. Kramer in several high-profile construction cases, as have other attorneys within my law firm. I found Mr. Kramer to be extremely knowledgeable, considerate, qualified and efficient in his representation in those matters. As I

---

4 See Tyrone Latour e-mail to Charles Kramer, dated November 6, 2019. Furthermore, the undersigned is troubled with the tenor of this type of "advise" from one attorney to opposing counsel in civil litigation; it could certainly be considered extortive.

mentioned above, Mr. Kramer is generally regarded as a highly qualified and experienced construction attorney by all other attorneys specializing or practicing in construction law, and he is also a Supreme Court Board Certified Construction Law attorney, who has practiced in that area for 27 years.

H.      Whether the fee is fixed or contingent.

Mr. Kramer concedes that the fee in this case "was not a contingency, so no contingency multiplier is appropriate."

**\* Accordingly, it is the undersigned's opinion that, after applying the unconstrained Rowe factors, a reasonable attorneys' fee award to be awarded to ART PLUMBING in this case would be $441,196.50.**

FURTHER AFFIANT SAYETH NAUGHT.

DAVID L. WORTHY, AFFIANT

The foregoing instrument was acknowledged before me this 15th day of March 2024, by DAVID L. WORTHY, who is personally known to me.

MARY JENSEN
Notary Public · State of Florida
Commission # HH 397365
My Comm. Expires May 11, 2027
Bonded through National Notary Assn.

NOTARY PUBLIC
Printed Name: Mary Jensen
Commission Expires: 05/11/2027
Commission No.: HH 397365

10